FILED
3/31/2022 3:51 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L003032

17323683

**THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| MATTHEW KRAUSE, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LINDSEY KRAUSE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2022L003032 |
| | ) | |
| DEERE & COMPANY, a | ) | |
| Delaware corporation with its | ) | |
| principal place of business located in Illinois; | ) | |
| | ) | |
| JOHN DEERE CONSTRUCTION & | ) | |
| FORESTRY COMPANY, a | ) | |
| Delaware corporation with its | ) | |
| principal place of business located in Illinois; | ) | |
| | ) | |
| JOHN DEERE CONSTRUCTION | ) | |
| EQUIPMENT COMPANY, a | ) | |
| Delaware corporation with its | ) | |
| principal place of business located in Illinois; | ) | |
| | ) | |
| JOHN DEERE INDUSTRIAL | ) | |
| EQUIPMENT COMPANY, a | ) | |
| Delaware corporation with its | ) | |
| principal place of business located in Illinois; | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

COMES NOW the Plaintiffs, Matthew Krause and Lindsey Krause, by and through their

attorneys, THE KOMYATTE LAW FIRM LLC and TAXMAN, POLLOCK, MURRAY &

BEKKERMAN, LLC and in complaining of the Defendants, DEERE & COMPANY, JOHN DEERE CONSTRUCTION & FORESTRY COMPANY, JOHN DEERE CONSTRUCTION EQUIPMENT COMPANY and JOHN DEERE INDUSTRIAL EQUIPMENT COMPANY, state and allege as follows:

### INTRODUCTION

1.      This is a product liability action to recover damages suffered by the Plaintiffs arising out of incident on or about April 1, 2020 in Johnston, Colorado involving a 250G Excavator ("the subject Excavator") believed to bear Product Identification Number 1FF250GXEEE609118 that was designed, manufactured, distributed, marketed, and sold by Defendants. Plaintiff Matthew Krause suffered serious and permanent injuries in the incident as a result of defects with the subject Excavator. Plaintiff Matthew Krause seeks damages for his personal injuries, and Plaintiff Lindsey Krause seeks damages for her resulting loss of consortium.

### PARTIES

2.      Plaintiff **MATTHEW KRAUSE** is a citizen of Colorado.

3.      Plaintiff **LINDSEY KRAUSE** is a citizen of Colorado.

4.      Plaintiffs **MATTHEW KRAUSE** and **LINDSEY KRAUSE** may hereinafter be referred to as "Plaintiffs."

5.      Defendant **DEERE & COMPANY** is and was a corporation organized under the laws of the State of Delaware with its principal place of business and world headquarters located in the State of Illinois and doing business in Illinois. It may be served with process through its registered agent for service The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801 and/or its registered agent for service Todd E. Davies, One John Deere Place, Moline, IL 61265.

6.      Defendant **JOHN DEERE CONSTRUCTION & FORESTRY COMPANY** is and was a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Illinois and doing business in Illinois.  It may be

2

served with process through its registered agent for service The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801 and/or its registered agent for service Todd E. Davies, One John Deere Place, Moline, IL 61265.

7.     Defendant **JOHN DEERE CONSTRUCTION EQUIPMENT COMPANY** is and was a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Illinois and doing business in Illinois. It may be served with process through its registered agent for service Todd E. Davies, One John Deere Place, Moline, IL 61265.

8.     Defendant **JOHN DEERE INDUSTRIAL EQUIPMENT COMPANY** is and was a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Illinois and doing business in Illinois. It may be served with process through its registered agent for service Todd E. Davies, One John Deere Place, Moline, IL 61265.

9.     Defendants **DEERE & COMPANY, JOHN DEERE CONSTRUCTION & FORESTRY COMPANY, JOHN DEERE CONSTRUCTION EQUIPMENT COMPANY,** and **JOHN DEERE INDUSTRIAL EQUIPMENT COMPANY** may hereinafter be collectively referred to as "John Deere" and/or as "Defendants."

10.    John Deere, directly and through its subsidiary and related entities, distributes and sells farm, construction, and industrial equipment, including the subject Excavator, throughout the U.S., including in Illinois.

11.    John Deere intentionally targets the Illinois market for the sale of its farm, construction, and industrial equipment, including the subject Excavator.

12.    John Deere routinely places its excavators into the stream of commerce in Illinois with the intent and expectation that its excavators will be purchased and used in Illinois.

13.    John Deere knows its excavators will reach Illinois.

3

14. John Deere knows its excavators will reach Illinois, and it intentionally targets the Illinois market through its network of John Deere dealerships throughout Illinois.

15. John Deere purposefully serves the Illinois excavator market.

16. John Deere conducts business in Illinois, including in Cook County, Illinois.

17. John Deere maintains its world headquarters in Illinois and directs its global operations from the State of Illinois, including its design, manufacture, marketing, sale and distribution of products, including the subject excavator, throughout Illinois, the U.S. and the world.

18. John Deere has numerous authorized dealers located in Illinois that sell its excavator products, including the subject Excavator, to Illinois customers. John Deere purposefully utilizes these dealers to market to, target, and sell its excavator products to the Illinois market. As such, John Deere purposefully avails itself of the privilege of conducting business in Illinois.

19. John Deere advertises its excavator products, including the subject Excavator, in Illinois.

20. John Deere provides warranties for its excavator products in Illinois and routinely services, maintains, and repairs its excavator products throughout Illinois utilizing its network of established and authorized dealers.

21. John Deere has established a continuing presence in Illinois through its warranty, service, and repair activities and through its authorized dealers throughout Illinois.

22. John Deere has solicited and conducted business in Illinois, derived substantial revenue from that business, and expected or should have expected that its acts and omissions could have consequences in Illinois and that it could be haled into court in Illinois.

23. John Deere has purposefully availed itself of the laws of the State of Illinois by designing and manufacturing its excavator products, including the subject Excavator, in Illinois and placing those into the stream of commerce with the full knowledge and intent

4

that they would likely end up in Illinois; by distributing, marketing, and selling its products in Illinois and to Illinois consumers, directly and through its authorized Illinois dealers; by operating a technology center in Chicago; and by regularly carrying on warranty, service, and repair activities in Illinois, directly and through its authorized Illinois dealers.

24.    A substantial portion of John Deere's yearly profits are derived by sales of its products in Illinois, including its excavator products.

### JURISDICTION AND VENUE

25.    This Court has personal jurisdiction over the Defendants because Defendants have transacted and continue to transact business in Illinois, and because Defendants have committed the acts and omissions complained of herein in the State of Illinois.

26.    This Court is vested with venue of this action because John Deere has an office or offices in Chicago, does extensive business in Chicago, and is a resident of Cook County.

### COMMON ALLEGATIONS

27.    On or about April 1, 2020, Plaintiff, Matthew Krause, was using the subject Excavator at his place of employment in Johnstown, Colorado. During an effort to engage in some maintenance and/or repair work on the subject Excavator, Matthew Krause was seriously injured when high pressure diesel fuel sprayed out of the engine, striking him the face, eye, head, neck and other parts of his body.

28.    Plaintiff suffered serious and permanent personal injuries in the incident.

29.    The subject Excavator was designed, tested, manufactured, marketed, sold and placed into the stream of commerce by John Deere.

### CLAIMS AGAINST ALL DEFENDANTS

## COUNT I
### (Strict Products Liability – Against All Defendants)

30.     Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

31.     The subject Excavator was defectively designed, manufactured, fabricated, distributed, sold, recommended, tested, inspected, supplied, marketed, and placed into the stream of commerce by John Deere.

32.     John Deere designed, tested, assembled, manufactured, marketed, specified, fabricated, distributed and sold the subject Excavator and its components, and placed the Subject Excavator and its components into the stream of commerce knowing that the Subject Excavator and its components would be used in their intended manner.

33.     At the time of the subject incident, the subject Excavator was being used in a manner and fashion that was foreseeable to John Deere and in a manner in which it was intended to be used.

34.     At the time the subject Excavator left the control of John Deere, it was defective and unreasonably dangerous to a person who might reasonably be expected to use it. These defects include, but are not limited to, the conditions described in this cause of action and as also described elsewhere in this Complaint.

35.     The subject Excavator was defective in its design and manufacture. The subject excavator failed to provide reasonable protection to users in foreseeable circumstances.

36.     Specifically, the subject Excavator lacked adequate safety features with respect to various systems and components, including but not limited to its engine, engine bay, fuel system, fuel injector, piston head, and fuel line components, including to protect against injury from the rapid expulsion of high-pressure diesel fuel under foreseeable circumstances.

37.     The subject Excavator was unreasonably dangerous in that it failed to provide reasonable protection to users when being used in its intended and foreseeable manner.

38.     The subject Excavator contained an engine and fuel system that was deficient and that failed to provide reasonable protection during foreseeable maintenance and repair work on the engine, the fuel system, and/or their components.

39.     The subject Excavator had a dangerous propensity to expel high-pressure diesel fuel during foreseeable maintenance and repair work, subjecting the user to injurious forces. In the subject incident, during some foreseeable maintenance and/or repair work, the subject Excavator expelled high-pressure diesel fuel from the engine and/or fuel system, and/or their components, striking Plaintiff Matthew Krause in the head, face, and neck and causing him to suffer serious and permanent injuries to his head, face, eye, neck and other portions of his body.

40.     The subject Excavator lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the subject Excavator and its components as described in detail herein and the reasonable means to reduce such risks, dangers and harms. In particular, the subject Excavator lacked adequate warnings concerning the risk that high-pressure diesel fuel could be expelled from the engine and/or fuel system, and/or their components, during ordinary and foreseeable use of the product and these components, including but not limited to routine maintenance, service and/or repair work. The subject Excavator specifically lacked sufficiently clear and prominent warnings to this effect that were posted on the Excavator itself.

41.     The Subject Excavator also lacked adequate warnings and instructions about certain maintenance, service or repair work being performed only by trained, certified or otherwise appropriate personnel.

42.     The subject Excavator's design failed to incorporate other designs and technologies which could protect users from foreseeable risks of injury from the rapid expulsion

7

of high-pressure diesel fuel under ordinary and foreseeable use. It is believed that John Deere was aware of some such designs and technologies, including superior designs and technologies used by other manufacturers and superior designs used by John Deere in other John Deere products.

43.    The subject Excavator's various systems and components failed to work in conjunction with one another to provide proper and appropriate protection to the Plaintiff.

44.    For all the reasons set forth in this Count and throughout this Complaint, the subject Excavator was defective and unreasonably dangerous to a person who might reasonably be expected to use it.

45.    The subject Excavator was expected by John Deere to reach, and did reach, the user without substantial change in the condition in which it was placed on the market.

46.    The Plaintiff Matthew Krause was a person who would reasonably be expected to use the subject Excavator.

47.    The defects in the subject Excavator were a proximate cause of the serious injuries sustained by Plaintiffs. Absent the defects, Plaintiff Matthew Krause would not have suffered serious and permanent personal injuries in the accident, including but not limited to serious and permanent injuries to his head, face, eye, and neck, and including loss of his left eye. Absent the defects, Plaintiff Lindsey Krause would not have suffered a loss of consortium.

48.    John Deere is strictly liable to the Plaintiffs for injuries and damages caused by defects and inadequacies in the design and manufacture of the subject Excavator. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject Excavator, Plaintiffs have incurred substantial damages, which are fully set forth in the damage allegations.

**WHEREFORE,** Plaintiffs pray for judgment against John Deere in an amount to

8

be determined at trial in excess of Fifty Thousand Dollars ($50,000.00) that would fairly and reasonably compensate Plaintiffs for their injures and damages, and for such other and further relief as the Court deems just and proper.

## COUNT II
### (Negligence – Against All Defendants)

49.     Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

50.     At all times herein relevant, John Deere was engaged in the business of designing, manufacturing, testing, selling, and placing into the stream of commerce the subject Excavator and other similar products throughout the United States and throughout the state of Illinois.

51.     John Deere had a legal duty to conform its conduct to the law and that of a reasonable corporation, which includes adequately and properly manufacturing, designing, testing, and selling its products, including the subject Excavator, and providing adequate warnings and instructions to users of the subject Excavator, and acting without negligence or other wrongful conduct.

52.     John Deere negligently designed, tested, approved, manufactured, specified, marketed, distributed, and sold the subject Excavator and its components in that it failed to exercise reasonable care to prevent the subject Excavator and its components from creating an unreasonable risk of harm to a person who might reasonably be expected to use them in an expected or reasonably foreseeable manner.

53.     John Deere breached its duties and failed to conform its conduct to the law and that of a reasonable person, causing the injuries and damages to Plaintiff.

54.     At the time of the design and manufacture of the subject Excavator, John Deere was aware or should have been aware of the defects in the subject Excavator but inserted

9

the subject Excavator into the stream of commerce anyway, without seeking to design out the defects, guard against them, use a safer alternative design, and/or provide reasonable or adequate warnings to foreseeable users of the subject Excavator.

55.    At the time of the design, manufacture, and sale of the subject Excavator, John Deere was aware or should have been aware of safer alternative designs that were technologically and economically feasible but chose not to incorporate these alternative designs in the subject Excavator. Such designs included but are not limited to engine, engine bay, fuel system, fuel injector, piston head, and fuel line designs, and component and/or system designs, that do not have a propensity to rapidly expel high-pressure diesel fuel during foreseeable use, including during routine maintenance and/or repair work.

56.    At the time of the design, manufacture, and sale of the subject Excavator, John Deere knew that it was a critical from a safety standpoint to provide proper and adequate protection to foreseeable users of the product, including during routine maintenance and/or repair work. John Deere knew that the engine, engine bay, fuel system, fuel injector, piston head, and fuel line designs, and component designs, need to work together and in conjunction to safely achieve their purpose. John Deere also knew that there were ample available safety technologies that could effectively protect users of the subject Excavator during such foreseeable use of the product.

57.    At the time of the design, manufacture, and sale of the subject Excavator, John Deere knew that it was a critical from a safety standpoint to provide adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the subject Excavator and its components as described in detail herein and the reasonable means to reduce such risks, dangers and harms. John Deere knew that adequate and sufficient warnings concerning the risk

10

that high-pressure diesel fuel could be expelled from the engine and/or fuel system, and/or their components, during ordinary and foreseeable use of the product and these components, including but not limited to routine maintenance and/or repair work, was critical to preventing injurious impacts to foreseeable consumers and users of its products during such circumstances, including but not limited to sufficiently clear and prominent warnings and instructions to this effect on the Excavator itself, and that omitting such warnings and instructions not only created an unreasonable risk of harm to consumers, but involved a high degree of probability that such harm would actually result.

58.     At the time of the design, manufacture, and sale of the subject Excavator, John Deere knew that it was a critical from a safety standpoint to provide adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the subject Excavator and its components from routine maintenance and/or repair work and that proper instructions and warnings were necessary about certain repairs and/or maintenance being done only by trained, certified or otherwise appropriate personal.

59.     At the time of the design and manufacture of the subject Excavator, John Deere was aware or should have been aware of the susceptibility of the subject Excavator, including the engine, engine bay, fuel system, fuel injector, piston head, and/or fuel line, to rapidly expel high-pressure diesel fuel during ordinary and foreseeable use of the product and these components, including but not limited to routine maintenance and/or repair work. Specifically, John Deere was aware or should have been aware that rapid, sudden expulsion of high-pressure diesel fuel by the subject Excavator posed a substantial risk of injurious impacts to foreseeable users of its product including during such circumstances.

11

60.     John Deere's knowledge as described in this Complaint is believed to be reflected in internal communications or testing conducted by John Deere or known to John Deere.

61.     John Deere's knowledge as described in this Complaint is believed to reflected in reports of other incidents involving other John Deere and excavator products.

62.     John Deere's knowledge as described in this Complaint is believed to be reflected in the results of tests, studies, and analyses conducted by John Deere and others.

63.     John Deere acted unreasonably and was negligent in designing, manufacturing, and marketing an excavator that presented a substantial and unreasonable risk of injury to users of the excavator, including the Plaintiff.

64.     John Deere knew or should have known that its actions in designing, manufacturing and selling the subject Excavator not only created an unreasonable risk of harm to consumers but involved a high degree of probability that such harm would actually result.

65.     In engaging in the design, manufacture, and sale of the subject Excavator, John Deere undertook a conscious choice of a course of action with knowledge of the serious dangers to others and/or with knowledge of facts which would disclose this danger to any reasonable corporation.

66.     John Deere breached its duties and obligations set forth in this Count by manufacturing and selling the subject Excavators with the defects set forth in this Complaint, which defects were known to or should have been known to John Deere.

67.     As a direct and proximate result of defects in the subject Excavator and the wrongful conduct, acts and omissions of John Deere, Plaintiffs suffered serious personal injuries and damages as alleged herein.

12

**WHEREFORE,** Plaintiffs pray for judgment against John Deere in an amount to be determined at trial in excess of Fifty Thousand Dollars ($50,000.00) that would fairly and reasonably compensate Plaintiffs for their injures and damages, and for such other and further relief as the Court deems just and proper.

<strong><u>COUNT III</u></strong><br><strong>(Breach of Express Warranties – Against All Defendants)</strong>

68.     Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

69.     John Deere knew the particular purposes for which the subject Excavator and its components were required and were to be used, and that purchasers and users such as the Plaintiff would rely on John Deere's skill or judgment in designing, testing, manufacturing, and furnishing goods suitable for such purposes and uses.

70.     The subject Excavator, including its component parts, was not free from defects or fit for the purpose for which it was to be used, and was in fact defectively designed, manufactured, and distributed and imminently dangerous to occupants and users, and in fact did cause, serious and permanent injuries to the Plaintiff Matthew Krause while being used in a manner reasonably foreseeable to John Deere. As a result, the subject Excavator was unsafe and dangerous for use by the consumer and in particular by the Plaintiff Matthew Krause.

71.     John Deere expressly warranted to purchasers and foreseeable users of the subject Excavator, including the Plaintiff Matthew Krause, that the subject Excavator was fit for the purpose for which it was intended to be used and was free from manufacturing and design defects.

72.     John Deere expressly warranted to purchasers and users of the subject Excavator, including the Plaintiff Matthew Krause, that the subject Excavator was suitable for its

13

intended use, was of merchantable quality, and would provide adequate protection for its intended and foreseeable use. The warranty was not limited and extended to future performance.

73.     The subject Excavator was defective and was not of merchantable quality and was not fit for its intended purpose in that it was capable of causing, and, in fact, did cause serious and permanent injuries to the Plaintiff Matthew Krause, while being used in a manner reasonably foreseeable to John Deere.

74.     As a direct and proximate result of each breach of John Deere's express warranties, Plaintiffs suffered the injuries and damages as herein alleged.

**WHEREFORE**, Plaintiffs pray for judgment against John Deere in an amount to be determined at trial in excess of Fifty Thousand Dollars ($50,000.00) that would fairly and reasonably compensate Plaintiffs for their injures and damages, and for such other and further relief as the Court deems just and proper.

## COUNT IV
### (Loss of Consortium – Against All Defendants)

75.     Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

76.     At the time of the incident complained of in the Plaintiffs' Complaint in which Matthew Krause suffered severe injuries, the Plaintiffs were married and the Plaintiffs continue to be married.

77.     As a result of the defective and unreasonably dangerous condition of the subject Excavator and the wrongful and negligent conduct of the Defendants, the Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

WHEREFORE, the Plaintiff, Lindsey Krause, demands judgment against John Deere in an amount to be determined at trial in excess of Fifty Thousand Dollars ($50,000.00) that would

14

fairly and reasonably compensate Plaintiff for her damages and injuries, and for such other and further relief as the Court deems just and proper.

## CAUSATION & DAMAGES
### (Against All Defendants)

78.    Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

79.    As a direct and proximate result of the defective and unreasonably dangerous condition of the subject Excavator and the acts and omissions of John Deere, Plaintiff Matthew Krause has incurred and seeks the following general and special damages:

a.  Pain and suffering, mental anguish, and emotional distress, past and future;

b.  Reasonable and necessary medical, hospital, and rehabilitation care and services, nursing care and services, medications, therapies and other expenses, past and future, including special medical damages;

c.  Inconvenience;

d.  Loss of income and earning potential;

e.  Loss of enjoyment of life and impairment of qualify of life;

f.  Physical impairment;

g.  Physical disfigurement; and

h.  All such other monetary relief and compensatory damages as permissible at common law and by statute and to which Plaintiff Matthew Krause is entitled.

80.    As a direct and proximate result of the defective and unreasonably dangerous condition of the vehicle and the acts and omissions of John Deere, Plaintiff Lindsey Krause has suffered general and special damages, including a loss of consortium.

15

WHEREFORE, Plaintiffs pray for and demand an award of damages to be fixed against the Defendants by the trier of fact in a reasonable amount. Additionally, Plaintiffs ask for the costs of this action, reasonable attorney fees, all pre-judgment and post-judgment interest as provided by law, and for all such other relief to which they are legally entitled and as the Court deems appropriate.

PLAINTIFFS DEMAND A TRIAL BY JURY.

Respectfully submitted this 31st day of March, 2022.

By: _____
TAXMAN, POLLOCK, MURRAY &
BEKKERMAN, LLC
Gerald Bekkerman
Jonathan D. Treshansky
225 West Wacker, Suite 1750
Chicago, IL 60606
Email: mtaxman@tpmblegal.com
Attorney No. 61090


By: _____
THE KOMYATTE LAW FIRM LLC
Paul J. Komyatte
722 Washington Ave., Suite 202
Golden, CO 80401
Office: (720) 975-TKLF (8553)
Fax: (720) 528-8072
paul@komyattelawfirm.com
Attorney No. 22750
Cook County Attorney Code 60713


**ATTORNEYS FOR PLAINTIFFS**